## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**MICHAEL RUSS,**

    **Plaintiff,**

**v.**                           **CASE NO. 5:12-cv-38-RS-CJK**

**THE GEO GROUP, INC.; BOBBY**
**HADDOCK, in his official capacity as**
**SHERIFF OF WASHINGTON COUNTY;**
**LOUIS ROBERTS, in his official capacity**
**as SHERIFF OF JACKSON COUNTY;**
**JEREMY PELFREY; and BENJAMIN BURCH,**

    **Defendants.**

_____/

## ORDER

Before me are:

- Motion for Summary Judgment of Defendant, Bobby Haddock (Doc. 57), Plaintiff's Response (Doc. 68), and Defendant Haddock's Reply (Doc. 84);

- Motion for Summary Judgment of Defendant Jeremy Pelfrey (Doc. 58), Plaintiff's Response (Doc. 69), and Defendant Pelfrey's Reply (Doc. 85);

- Defendant The GEO Group, Inc.'s Motion for Summary Judgment (Doc. 61), Plaintiff's Response (Doc. 67), and Defendant The GEO Group's Reply (Doc. 87); and

- Statement of Undisputed Facts in Support of Summary Judgment Motions of Defendants Bobby Haddock and Jeremy Pelfrey (Doc. 59), Defendant The GEO Group, Inc.'s Statement of Undisputed Material Facts (Doc. 62), and Plaintiff's Statement of Disputed Material Facts (Doc. 70).

## Standard of Review

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for

that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## Background

On March 26, 2010, Plaintiff was acquitted of Possession of Contraband Upon the Grounds of a State Correctional Institution. Doc. 73-6. On August 29, 2009, he had been stopped in the parking lot of the Graceville Correctional Facility ("GCF") and subjected to a search of his vehicle. According to law enforcement, this search yielded a baggie of cocaine and a baggie of marijuana. According to Plaintiff, either the officer conducting the search or employees of GCF planted the drugs in his vehicle.[1]

Plaintiff was employed from January 2009 through October 2009 as an assistant library aide by Defendant The GEO Group, Inc. ("GEO"), which operated GCF at that time. GCF is located in Jackson County, Florida. The Assistant Warden was Terry Dudley, and Captain Tim Taylor was a security officer. Early in his employment, Plaintiff began noticing misconduct by other employees. He documented the misconduct and reported it to his supervisors. One of the main offenders was a law library aide who engaged in inappropriate relationships with inmates and provided inmates with drugs. Plaintiff alleges that this aide

---

[1] The substance believed to be cocaine was tested by the Florida Department of Law Enforcement and did contain cocaine. The substance believed to be marijuana field tested positive for marijuana, but Plaintiff claims that "testing demonstrated that the substance within the vehicle was not marijuana or contraband." Compl. ¶ 15. Defendants Haddock and Pelfrey claim that the substance believed to be marijuana was not tested by the Florida Department of Law Enforcement. Doc. 59 n.3.

orchestrated a fight among inmates because one inmate had been discussing her illicit activities with other inmates. According to Plaintiff, he contacted Captain Taylor to report the fight, but Captain Taylor ignored Plaintiff and instead went into a room with the aide. Eventually Plaintiff discovered hard evidence of the aide's activities, and she resigned.

Plaintiff also alleges that he was told by an instructor of academic courses at the facility that GEO falsified the number of students in the courses to show compliance with GEO's contractual obligations. Plaintiff's job included engaging in "corrective consultations" with inmates regarding their coursework, but he told supervisors, including Assistant Warden Dudley, that he refused to participate in the consultations because he did not want to be involved with any fraudulent activity. Plaintiff also claims to have overheard the chief of security threaten an inmate with disciplinary action if the inmate did not drop a lawsuit pending against GEO.

In August of 2009, Plaintiff was summoned to Assistant Warden Dudley's office and questioned about a baggie of marijuana. Dudley alleged that Plaintiff had brought the marijuana to an inmate and the inmate had reported him. Plaintiff denied bringing the marijuana and told Dudley that he felt like he was being targeted for reporting the misdeeds of other employees.

August 29, 2009, was a Saturday visitation day at GCF. Jeremy Pelfrey, a Washington County, Florida, deputy sheriff assigned as a K-9 handler, was at GCF with his K-9 Aix to conduct a sweep of the vehicles in the parking lot. Deputy Pelfrey claims that he was called on the previous evening by a GEO officer requesting him to do the sweep, that he suggested that the officer contact the Jackson County Sheriff's office, and that he was told by the GEO officer that the Jackson County K-9 unit had already been contacted and was unavailable. Deputy Pelfrey alleges that he was told that GEO officials were suspicious that Plaintiff would be involved in bringing drugs into GCF. Doc. 59 ¶ 3.[2]

Plaintiff arrived at work around 7:35 a.m. He clocked out around 10:30 a.m. for his lunch break and drove around downtown Graceville. He then returned to work and attempted to clock back in. Plaintiff claims that he was unable to clock back in because he still had time left on his lunch break, but GEO asserts that he did successfully clock back in. Doc. 70 ¶ 33; Doc. 62 ¶ 3. Plaintiff returned to his vehicle and attempted to leave the GCF parking lot to get gas, but Captain Taylor stopped Plaintiff's vehicle and asked Plaintiff where he was going. Plaintiff alleges that Captain Taylor had been crouching between vehicles earlier and

---

[2] GEO Officer Maura Williams was instructed to alert security when Plaintiff returned from lunch and understood that he might be subjected to a search because security officers were suspicious that he might attempt to bring drugs into GCF. *See generally* Williams Dep. (Doc. 60-5). Officer Williams had listened to an inmate's recorded phone conversation which made her suspect that Plaintiff was going to attempt to bring drugs into GCF. *Id.* at 26:10-28:7.

"jumped out from between parked cars" to stop Plaintiff from leaving. Doc. 70 ¶ 34, 36. What happened next is largely in dispute.

Plaintiff claims that Captain Taylor stepped away from the vehicle and Plaintiff resumed driving out of the parking lot, but Captain Taylor then motioned to somebody and Deputy Pelfrey ran from the opposite side of the parking lot and stood in front of Plaintiff's vehicle. Doc. 70 ¶ 38. Plaintiff claims that Deputy Pelfrey did not have Aix with him. Defendants claim that Aix performed a sniff of Plaintiff's vehicle and alerted for the presence of drugs. Doc. 62 ¶ 5; Doc. 59 ¶ 9. According to Plaintiff, Deputy Pelfrey said that Aix had sniffed the vehicle and that "he knew there were drugs in the vehicle." Doc. 70 ¶ 45. Plaintiff claims that Deputy Pelfrey asked whether Plaintiff used drugs, Plaintiff said that he did not, and Deputy Pelfrey said, "of course you don't use them, you just sell 'em." Doc. 70 ¶ 46. Plaintiff then consented to a search of his vehicle, and Deputy Pelfrey performed a search.[3] During the search, Deputy Pelfrey asked Plaintiff for his keys, which were needed to open the glove box, and Plaintiff gave his keys to Deputy Pelfrey. Deputy Pelfrey alleges that he observed two baggies in the glove box, and recognized them to contain crack cocaine and marijuana. Doc. 59 ¶ 13. Deputy Pelfrey claims that he left the baggies in the glove box and placed Plaintiff in handcuffs, and then contacted the Jackson County Sheriff's Department to take

---

[3] Plaintiff now argues that this consent was not given voluntarily.

over. Doc. 59 ¶ 14. Deputy Pelfrey did not search the rest of the vehicle. Plaintiff claims that Captain Taylor said to Deputy Pelfrey, "I told you there were drugs in there." Doc. 70 ¶ 53. Plaintiff alleges that he asked why he was being detained and in response, Deputy Pelfrey pointed to the passenger seat of Plaintiff's vehicle, where two baggies were sitting on top of a book, not in the glove box.

Plaintiff claims that he told Deputy Pelfrey and Captain Taylor that he had never seen the baggies before and that they did not belong to him, but Deputy Pelfrey called Plaintiff a liar. Doc. 70 ¶ 57. Plaintiff alleges that he suggested that Deputy Pelfrey review the security camera footage of the parking lot from that morning because Plaintiff had accidentally left his car unlocked, but Deputy Pelfrey responded, "I don't need to because I know you're guilty because that's how we roll in Washington County." Doc. 70 ¶ 58. Plaintiff claims that Captain Taylor told him that "snitches always end up in ditches" and that he overheard Deputy Pelfrey telling Captain Taylor what to say about the incident. Doc. 70 ¶ 72, 74.

Jackson County deputies arrived on the scene and took over the investigation. Deputy Pelfrey's handcuffs were replaced with those of a Jackson County deputy, and Deputy Pelfrey eventually left GCF. Plaintiff alleges that he told the Jackson County deputy who handcuffed him that the drugs were not his,

but that deputy said, "Mr. Dudley wants you to be charged, so I'm charging you."

Doc. 70 ¶ 82.[4]

Plaintiff has brought claims for false arrest or false imprisonment against GEO, Deputy Pelfrey, and Bobby Haddock, the Sheriff of Washington County, a malicious prosecution claim against GEO, and claims of Fourth Amendment violations against GEO, Deputy Pelfrey and Sheriff Haddock.

## Analysis

I begin by addressing Count V, because that is the count alleging constitutional violations which give me supplemental jurisdiction over the four state law claims. Plaintiff argues that his civil rights were violated because of his false arrest. Specifically, Plaintiff alleges that "GEO solicited the help and assistance of [Deputy Pelfrey] to have Plaintiff arrested knowing that the allegations against him were not true" and that Sheriff Haddock was "deliberately indifferent to training [Deputy Pelfrey] in the fact that probable cause is not contrived to effect an arrest of someone like Plaintiff.[5] [Sheriff Haddock] also [has] failed to adopt adequate rules and/or procedures in place to detect problems

---

[4] Plaintiff claims that there was a surveillance camera in the parking lot and that footage could show that somebody planted drugs in his vehicle. He argues that the fact that Defendants failed to preserve and produce the footage allows for an adverse evidentiary inference that the destroyed footage would not have been favorable to the spoliator. I do not address this contention because I have not previously determined that Plaintiff is entitled to such an inference and doing so would have no effect on my ultimate conclusions.

[5] Plaintiff also alleged that GEO was deliberately indifferent to training the individual Defendants, but none of the individual Defendants is a GEO employee so this contention is not addressed. Compl. ¶ 45.

with deputies . . . ." Compl. ¶ 44-45.  Plaintiff argues that there was no probable

cause for his arrest.

Although not alleged in his complaint, Plaintiff now argues that the search of

his vehicle was also illegal.  Plaintiff maintains that Deputy Pelfrey had no legal

reason to stop Plaintiff's vehicle, did not have Aix do a sniff of his vehicle (and

even if he did, Aix was not certified or qualified to serve as a narcotics K-9), had

no probable cause to search his vehicle, did not obtain consent to search the

vehicle, and had no authority to act in Jackson County.  Doc. 69 p. 2.  This

argument is without merit.

Pursuant to the Florida Administrative Code, "[n]o employee shall refuse to

submit to a search or inspection by an authorized employee of his person, personal

property or vehicle while entering, departing or otherwise being upon the premises

of an institution."  Fla. Admin. Code r. 33-208.002(7)(a).[6]  Even if Defendant

Pelfrey could not be characterized as an "authorized employee," the facts of this

case are similar to those of *United States v. Sihler*, 562 F.2d 349 (5th Cir. 1977),

where the court held that a prison employee had given consent to be searched at

any time.  In *Sihler*, a prison employee passed a sign each day which warned him

against introducing contraband into the facility and informed him that all persons

entering the facility were subject to search.  *Id.* at 350.  Further, because "Sihler

---

[6] GEO is subject to this rule. *See Jackson v. The GEO Group, Inc.*, 312 F. App'x 229, 231 (11th Cir. 2009).

voluntarily accepted and continued an employment which subjected him to search on a routine basis, [the court found] that the search in question was made with his consent." *Id.* at 351. Here, GCF had two signs in the parking lot advising employees that they were subject to search for contraband. Henry Dep. (Doc. 87-1). Further, Plaintiff acknowledged that he was subject to search at any time. Russ Dep. 99:23-100:11 (Doc. 60-1). Accordingly, even if consent was needed to search Plaintiff's vehicle, it had been voluntarily given by Plaintiff.

It is well-settled that a warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a claim under 42 U.S.C. § 1983.[7] *See, e.g.*, *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (citing *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990)). An arrest made with probable cause provides an absolute bar to a section 1983 action for false arrest. *Ortega*, 85 F.3d at 1525 (citing *Marx*, 905 F.2d at 1505). The Eleventh Circuit "has concluded that the standard for determining the existence of probable cause is the same under both Florida and federal law - whether 'a reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer.'" *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (quoting *United States v. Ullrich,* 580 F.2d 765, 769 (5th Cir. 1978) (quoting *State v. Outten,* 206

---

[7] Section 1983 does not create any substantive rights, but rather provides a remedy for deprivations of rights established by the United States Constitution. *See Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).

So.2d 392, 397 (Fla. 1968))). Because this case is before me on motions for summary judgment, I need only decide whether Defendants carried their burden of demonstrating, as a matter of law, that probable cause existed to arrest Plaintiff. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). "If the defendants fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff." *Id.* at 1233.

While Plaintiff did not see anybody plant the drugs in his car, a jury question still exists as to whether Deputy Pelfrey fabricated evidence upon which to base Plaintiff's arrest. Thus, the question of whether arguable probable cause for the arrest existed is suited for a jury. *See id.* Defendants emphasize that Plaintiff has no direct evidence to support his assertion that the drugs were planted in his vehicle. But Plaintiff has presented circumstantial evidence that could lead a reasonable jury to conclude that he was framed. Many material facts are in dispute. For example, Deputy Pelfrey asked Plaintiff for his keys and claims he then unlocked the glove box and found the baggies inside. Doc. 59 ¶ 13. However, Plaintiff claims that the baggies were lying atop a book on his passenger seat. Doc. 70 ¶ 56. It could be the case that Deputy Pelfrey asked Plaintiff for his

keys only to make it seem like the drugs came from the locked glove box. Plaintiff claims that he suggested that Deputy Pelfrey review the security camera footage of the parking lot from that morning because Plaintiff had accidentally left his car unlocked, but Deputy Pelfrey responded, "I don't need to because I know you're guilty because that's how we roll in Washington County." Doc. 70 ¶ 58. The Eleventh Circuit has held that "an officer may not choose to ignore information that has been offered to him . . . . Nor may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts." *Kingsland*, 382 F.3d at 1229. On the other hand, Plaintiff alleges that Deputy Pelfrey commented that perhaps Plaintiff would start talking "if the heat was high enough," which would suggest that Deputy Pelfrey thought that Plaintiff had information to give. That is inconsistent with the notion that Deputy Pelfrey planted the drugs or knew that somebody else had and would tend to exculpate him. Further, it seems odd that Deputy Pelfrey would want to involve himself in such deplorable behavior when he had not been the target of any reporting by Plaintiff and seems to have no motivation for harming Plaintiff. However, there are material facts in dispute deserving the attention of a jury. Thus, Deputy Pelfrey is not entitled to summary judgment for Count V.

Deputy Pelfrey is not entitled to qualified immunity. To earn qualified immunity, Deputy Pelfrey must show that his conduct did not violate clearly

established constitutional rights of which a reasonable person would have known. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As detailed above, a jury question exists as to whether Defendant Pelfrey violated Plaintiff's constitutional rights by contriving probable cause for his arrest. Further, any reasonable law enforcement officer knows that doing so would violate the constitution. *See, e.g.*, *Kingsland v. City of Miami*, 382 F.3d 1220, 1232-34 (11th Cir. 2004).

Plaintiff also alleges that GEO is liable under section 1983. To this end, Plaintiff must establish that GEO's action deprived him of a right secured by the Constitution and that the action was taken by a person acting under color of law. *Dollar v. Haralson Cnty., Ga.*, 704 F.2d 1540, 1542-43 (11th Cir. 1983) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). To state a claim against a private entity performing a public function, there must be a policy or custom by which the constitutional deprivation was inflicted. *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997). Plaintiff argues that Captain Taylor violated his Fourth Amendment rights by working in conjunction with Deputy Pelfrey to illegally detain him. GEO argues that Captain Taylor did not deprive Plaintiff of any Constitutional right, and, even if he had, he did not do so under color of law.

Plaintiff argues that Captain Taylor violated his right to be free from unreasonable search and seizure by "assisting" Deputy Pelfrey with Plaintiff's detention. Doc. 67 p. 4. The entire argument focuses on Captain Taylor's assistance with the allegedly-illegal search of Plaintiff's vehicle. *See* Doc. 67 p. 11-13. No GEO employee arrested Plaintiff, nor did any GEO employee have the authority to do so. Plaintiff was not seized by GEO. I have already determined that Plaintiff consented to the search of his vehicle. Thus, GEO is entitled to summary judgment on Count V.

Plaintiff also argues that Sheriff Haddock is liable under section 1983. To impose liability on Sheriff Haddock, Plaintiff must show that his constitutional rights were violated, that Sheriff Haddock had a custom or policy that constituted deliberate indifference to that constitutional right, and that the custom or policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Plaintiff alleges that Sheriff Haddock had deficient policies permitting deputies to operate outside of Washington County and use uncertified K-9s and failed to properly train deputies regarding their jurisdictional restraints and the constitutional limitations for vehicle stops, searches, and seizures. Because I have determined that Plaintiff consented to the search of his vehicle while at GCF, the K-9 sniff was altogether unnecessary and I need not consider Aix's qualifications. The issues remaining are the alleged custom of permitting deputies work outside of

Washington County and the deficient training regarding jurisdiction and constitutional limitations.

Even if Sheriff Haddock had imperfect training in place regarding the constitutional limitations on search and seizure, Plaintiff has offered no evidence that Sheriff Haddock's alleged deficiencies were born of "deliberate indifference" to Plaintiff's constitutional right to be free from unreasonable seizure. "'Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights.'" *Id.* at 1291 (quoting *Bd. of the Cnty. Comm'rs of Bryan Cnty, Okla. v. Brown*, 520 U.S. 397, 415 (1997)). Thus, a plaintiff often must show a "pattern of injuries" linked to the custom or policy alleged to be deliberately indifferent to his constitutional rights. *McDowell*, 392 F.3d at 1291 (citing *Brown*, 520 U.S. at 408). The alleged constitutional violation – here, Plaintiff's seizure by Deputy Pelfrey – must be a "highly predictable consequence" of the custom or policy. *McDowell*, 392 F.3d at 1292 (citing *Brown*, 520 U.S. at 409-10). As previously discussed, if Deputy Pelfrey violated Plaintiff's constitutional rights, it was because he contrived probable cause to cause Plaintiff to be arrested. That is certainly not a highly predictable consequence of a failure to properly train deputies regarding the constitutional limitations for vehicle stops, searches, and seizures. Accordingly, Sheriff Haddock cannot be liable under this theory.

Finally, we arrive at the contention that Sheriff Haddock had a custom or policy of permitting his deputies to work outside of Washington County and failed to properly train them regarding their jurisdictional limitations.  It is undisputed that Deputy Pelfrey is a Washington County deputy sheriff and that GCF is in Jackson County.  However, the Sheriff of Jackson County and the Sheriff of Washington County operated under a Mutual Aid Agreement ("MAA"), and there was a similar Memorandum of Understanding ("MOU") between GEO and the Sheriff of Washington County which permitted Washington County deputies to assist at GCF.  Mutual Aid Agreements are specifically permitted by Florida law.  Fla. Stat. § 23.1225.  The Eleventh Circuit recently held that even if an officer operates outside the scope of a MAA in violation of Florida law,[8] "an arrest in violation of state law cannot alone support a cause of action under section 1983." *McDaniel v. Sheriff of Palm Beach Cnty., Fla.*, Case no. 11-4428 (11th Cir. Oct. 17, 2012).  And, again, Plaintiff has not offered any evidence of any other arrest stemming from a deputy acting contrary to the MAA which would show the deliberate indifference of Sheriff Haddock.  Plaintiff argues that he need not show widespread abuse to hold Sheriff Haddock liable.  However, it is the continued failure of a sheriff to prevent known constitutional violations by his deputies that is the type of policy or custom that is actionable under section 1983.  *Depew v. City*

---

[8] Florida Statute 23.1225 permits Mutual Aid Agreements.  Plaintiff argues that the MAA requires specific approval by the Sheriff of Jackson County for a Washington County deputy to operate in Jackson County, and that the MOU appears to provide only for assistance in the case of emergencies.

*of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff's contention that Sheriff Haddock is liable to Plaintiff for failing to enforce the MAA and failing to require Deputy Pelfrey to read it is without merit. Thus, Sheriff Haddock is entitled to summary judgment on Count V.

Counts I-III of the Complaint are state law counts for false arrest or false imprisonment against Geo, Deputy Pelfrey, and Sheriff Haddock, respectively. False imprisonment and false arrest are different labels for the same cause of action. *Rankin v. Evans*, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998) (citing *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1164 n.1 (Fla. Dist. Ct. App. 1981)). In Florida, false imprisonment "is defined as 'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'" *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006) (quoting *Escambia Cnty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. Dist. Ct. App. 1996)).

Plaintiff alleges that Captain Taylor falsely imprisoned him and that GEO is liable for this violation. Plaintiff admits that Captain Taylor detained Plaintiff only for a brief moment when Plaintiff was attempting to leave GCF for lunch, but argues that Captain Taylor "assisted" Deputy Pelfrey with Plaintiff's subsequent detention. Doc. 67 p.4. According to Plaintiff, Captain Taylor ordered him to put

his vehicle in park and turn off the engine. Captain Taylor then stood next to Plaintiff while Deputy Pelfrey searched the vehicle, and "it was clear that Plaintiff's freedom was restrained and he was not able to leave." *Id.* at 5. Clearly Captain Taylor did not restrain Plaintiff. GEO is entitled to summary judgment on Count I.

Deputy Pelfrey restrained Plaintiff when he placed Plaintiff in handcuffs.[9] As with a section 1983 action, the existence of probable cause is an affirmative defense to a false arrest or imprisonment claim under Florida law. *Jackson v. Navarro*, 665 So. 2d 340, 342 (Fla. Dist. Ct. App. 1995). Further, the standard for determining whether probable cause exists is the same under Florida and federal law. *Rankin*, 133 F.3d at 1435 (citing *United States v. McDonald*, 606 F.2d 552, 553 n.1 (5th Cir. 1979)). "The only difference in the probable cause analysis applicable to the state and federal claims at issue here is which party carrie[s] the burden of proving whether probable cause existed." *Rankin*, 133 F.3d at 1436. Plaintiff has the burden of demonstrating the absence of probable cause to succeed on his section 1983 claim, while Deputy Pelfrey has the burden of demonstrating the existence of probable cause as a defense to the state law claim. *Id.* As detailed above, questions of material fact exist regarding whether probable cause existed for Deputy Pelfrey to detain Plaintiff. Summary judgment is denied for Count II.

---

[9] Plaintiff claims that Deputy Pelfrey arrested him, but Deputy Pelfrey claims that he merely detained Plaintiff and Plaintiff was later arrested by Jackson County deputies.

If Deputy Pelfrey did not plant the drugs in Plaintiffs car or know that they had been planted, then he had probable cause to arrest Plaintiff, and neither he nor Sheriff Haddock would be liable for false arrest or imprisonment. If Deputy Pelfrey did plant the drugs in Plaintiffs car or know that they had been planted, then he did not have probable cause to arrest Plaintiff and acted maliciously and in bad faith. Florida statutory law provides governmental entities such as the sheriffs' offices with sovereign immunity when the alleged tort was committed in bad faith or with malicious purpose. Fla. Stat. § 768.28(9)(a); *see also Dist. Sch. Bd. of Lake Cnty. v. Talmadge*, 381 So. 2d 698, 703 (Fla. 1980); *Rance v. Jenn*, 2008 WL 5156675, at *5 (S.D. Fla. Dec. 9, 2008). Accordingly, the doctrine of sovereign immunity bars the claim of false arrest or imprisonment from being maintained against Sheriff Haddock and summary judgment must be granted as to Count III.

Count IV is a malicious prosecution claim against GEO. The parties agree that in Florida,

> to prevail in a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alterra Healthcare Corp. v. Campbell*, 78 So. 3d 595, 602 (Fla. Dist. Ct. App. 2011) (citing *Burns v. GCC Beverages, Inc.,* 502 So.2d 1217 (Fla. 1986); *Adams v. Whitfield,* 290 So.2d 49 (Fla. 1974)). GEO contends that Plaintiff cannot establish that it was the legal cause of Plaintiff's prosecution, that no probable cause existed to institute the prosecution, or that any GEO employee acted with malice. This argument is unpersuasive.

"In a malicious prosecution action, the element of legal causation is established where a defendant gave information to authorities which he or she knew or should have known to be false which was 'the determining factor in inducing the [arresting] officer's decision.'" *Alterra Healthcare Corp.*, 78 So. 3d at 603 (quoting *Orr v. Belk Lindsey Stores, Inc.,* 462 So.2d 112, 114 (Fla. Dist. Ct. App. 1985)). Most importantly for this action, a defendant may also be held liable where it withholds information which could have caused the cessation of criminal proceedings against the plaintiff. *Alterra Healthcare Corp.*, 78 So. 3d at 603. Here, Plaintiff claims that he saw Captain Taylor crouching between cars on the morning that he was arrested. He claims that Captain Taylor said to Deputy Pelfrey, "I told you there were drugs in there." He claims that Captain Taylor told him that "snitches always end up in ditches." He also alleges he was previously falsely accused by Assistant Warden Dudley of bringing marijuana into the facility and delivering it to an inmate, and that a Jackson County deputy told him, "Mr.

Dudley wants you to be charged, so I'm charging you."   A reasonable jury could conclude that Captain Taylor planted drugs in Plaintiff's car, or caused Deputy Pelfrey to do so, or knew who did.  If Captain Taylor in fact knew that the drugs had been planted and withheld this information from the state attorney, then GEO can properly be considered the legal cause of Plaintiff's prosecution.

I turn next to probable cause.  "'What facts and circumstances amount to probable cause is a pure question of law.  Whether they exist or not in any particular case is a pure question of fact.  The former is exclusively for the court; the latter for the jury.'"  *Glass v. Parrish*, 51 So.2d 717, 722 (Fla. 1951) (quoting *Cleveland, C., C. & St. L. Ry. Co. v. Dixon,* 51 Ind. App. 658, 96 N.E. 815, 816 (1911)).  Under Florida law, to show the absence of probable cause, Plaintiff must establish that the criminal proceeding against him was initiated without a reasonable ground of suspicion.  Importantly, "a malicious-prosecution defendant's good faith is an essential element to be considered on the question of probable cause . . . ."  *Alterra Healthcare Corp.*, 78 So. 3d at 602 (internal quotations and citations omitted).  If evidence was planted in Plaintiff's car and a GEO employee was aware of this fact and called in Deputy Pelfrey to cause Plaintiff's arrest, certainly there was no good faith and no probable cause.

Finally, it is clear that if a GEO employee planted drugs in Plaintiff's car, that employee acted with malice.  There is sufficient circumstantial evidence for a

jury to conclude that Captain Taylor knew that drugs had been planted in Plaintiff's car, which would be malicious even in the absence of his alleged comment that "snitches always end up in ditches."  Accordingly, GEO is not entitled to summary judgment on Count IV.

## Conclusion

Motion for Summary Judgment of Defendant, Bobby Haddock (Doc. 57) is **GRANTED**, Motion for Summary Judgment of Defendant Jeremy Pelfrey (Doc. 58) is **DENIED**, and Defendant The GEO Group, Inc.'s Motion for Summary Judgment (Doc. 61) is **GRANTED IN PART**.  Summary judgment is: granted in favor of GEO on Count I; denied to Deputy Pelfrey on Count II; granted in favor if Sheriff Haddock on Count III, denied to GEO on Count IV; and granted in favor of GEO and Sheriff Haddock on Count V, but denied to Deputy Pelfrey.


**ORDERED** on December 20, 2012.

**/s/ Richard Smoak**
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**
